IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CIVIL NO. 06-0654-WS |
| | ) | |
| HARRY WILLIS DAVIS, | ) | CRIMINAL NO. 03-0073-WS |
| | ) | |
| Petitioner. | ) | |

ORDER

This matter is before the Court on petitioner Harry Willis Davis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (doc. 52). The Motion has been briefed and is ripe for disposition at this time.

I.    Background.

On May 29, 2003, a grand jury convened in the Southern District of Alabama handed down a two-count Superseding Indictment (doc. 11) charging petitioner, Harry Willis Davis, with possessing with intent to distribute approximately 50.4 grams of crack cocaine on October 29, 2002, all in violation of 21 U.S.C. § 841(a)(1).[1]

Davis retained counsel, Willie J. Huntley, Jr., Esq., to represent him. This case proceeded to trial before the undersigned on June 9 and 10, 2003. On June 10, 2003, the jury returned a verdict of guilty against Davis as to the narcotics charge, and made a specific finding that the amount of crack cocaine that Davis possessed with intent to distribute was 50 grams or more. (Verdict Form (doc. 16), at 1.) On October 3, 2003, the Court sentenced Davis to a term of imprisonment of 151 months, to be followed by a five-year term of supervised release. (Doc. 25.) In reaching this sentence, the Court calculated a Sentencing Guidelines range of 151 to 188 months, based on a base offense level of 34 and a criminal history category of I.

On direct appeal, the Eleventh Circuit affirmed, rejecting Davis's arguments concerning evidentiary matters, allegedly improper closing argument by the prosecution, sufficiency of evidence as to drug quantity, and polygraph admissibility. (Doc. 50.) The Supreme Court

---

[1]    A second count, not germane to the instant § 2255 petition, sought the forfeiture of Davis's business, pursuant to 21 U.S.C. § 853.

vacated the Eleventh Circuit's judgment and remanded for further consideration in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005); however, on May 2, 2005, the Eleventh Circuit reinstated its prior opinion on the grounds that Davis had failed adequately to preserve any *Booker* error.  (Doc. 51.)  Davis again appealed.  On October 19, 2005, the Supreme Court denied his petition for writ of *certiorari*, thereby concluding his direct appeal.

On October 9, 2006, Davis initiated the instant § 2255 proceedings.  His petition raises the following grounds for relief: (i) trial counsel rendered ineffective assistance by failing to "file[] for downward departure pursuant to U.S.S.G. § 5C1.2(a)(1), prior to the sentencing hearing"; (ii) trial counsel rendered ineffective assistance by failing to familiarize himself with 21 U.S.C. § 841(a)(1) or U.S.S.G. § 5C1.2(a)(1); and (iii) trial counsel failed to conduct unspecified "pretrial investigation."  (Petition (doc. 52), at 5-6.)

## II.    Legal Standard.

Collateral relief is an extraordinary remedy which "may not do service for a [ ] [direct] appeal." *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).  A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted."  *Frady*, 456 U.S. at 164.  Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited.  *United States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).  Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. ... A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings.  The appellate process does not permit reruns." *Moore v. United States*, 598 F.2d 439, 441 (5th Cir. 1979).

In general, claims not raised on direct appeal may not be considered on collateral attack.  A petitioner can, however, overcome his procedural default of claims not raised on direct appeal.  The burden a petitioner must meet differs, depending upon the type of claim raised.  First, "nonconstitutional claims can be raised on collateral review only when the alleged error constitutes a fundamental defect which inherently results in the miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure." *Burke v. United States*, 152 F.3d 1329, 1331 (11th Cir. 1998) (citations and internal quotations omitted).  A petitioner's

burden with regard to constitutional claims not presented on direct appeal is slightly less stringent.  Constitutional claims may be considered if the petitioner can "show cause excusing his failure to raise the issues previously and actual prejudice resulting from the errors."  *Cross v. United States*, 893 F.2d 1287, 1289 (11th Cir. 1990).  Jurisdictional issues are not subject to procedural default because federal courts have limited jurisdiction and the parties cannot by waiver or default confer a jurisdictional foundation that is otherwise lacking.  *Harris v. United States*, 149 F.3d 1304, 1307 (11th Cir. 1998).

One way a petitioner may overcome a procedural default is by demonstrating that the default was attributable to constitutionally ineffective performance by trial or appellate counsel. *Cross*, 893 F.2d at 1290.  "To prevail on a claim of ineffective assistance, a defendant must establish two things: (1) counsel's performance was deficient, meaning it fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced the defendant." *Gordon v. United States*, 496 F.3d 1270, 1276-77 (11th Cir. 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  With respect to the deficient performance prong, a petitioner must show that counsel's performance was "objectively unreasonable and falls below the wide range of competence demanded of attorneys in criminal cases."  *Cross*, 893 F.2d at 1290; *see also Gallo-Chamorro v. United States*, 233 F.3d 1298, 1303 (11th Cir. 2000) (petitioner "must prove deficient performance by a preponderance of competent evidence, and the standard is reasonableness under prevailing professional norms"). "There is a strong presumption that counsel's performance was reasonable and adequate," which can be overcome only if the petitioner demonstrates that "no competent counsel would have taken the action that his counsel did take."  *Gordon*, 496 F.3d at 1281 (citations omitted); *see also Dingle v. Secretary for Dep't of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007) (petitioner satisfies deficient performance only by proving that counsel "made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment").  The test for reasonableness of performance "is not whether counsel could have done something more or different; instead, we must consider whether the performance fell within the broad range of reasonable assistance at trial."  *Stewart v. Secretary, Dep't of Corrections*, 476 F.3d 1193, 1209 (11th Cir. 2007).

As for the prejudice prong, "[a] petitioner's burden of establishing that his lawyer's

-3-

deficient performance prejudiced his case is also high." *Stewart*, 476 F.3d at 1209 (citation omitted). Indeed, prejudice requires a showing of a "reasonable probability that the result of the proceedings would have been different had counsel not performed deficiently." *Cross*, 893 F.2d at 1290. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Gallo-Chamorro*, 233 F.3d at 1303-04. A petitioner must show that the errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Cross*, 893 F.2d at 1292 (citation omitted). Thus, the prejudice requirement obliges a petitioner to prove "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Davis v. Terry*, 465 F.3d 1249, 1255 (11th Cir. 2006) (citation omitted).

"Conclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (citation omitted). Rather, an attorney's performance may be found ineffective in the constitutional sense only if "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

> "When reviewing whether an attorney is ineffective, courts should always presume strongly that counsel's performance was reasonable and adequate. ... Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so. This burden, which is petitioners' to bear, is and is supposed to be a heavy one. And, we are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial ... worked adequately. Therefore, the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."

*Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994) (internal quotations and citations omitted); *see also Caderno v. United States*, 256 F.3d 1213, 1217 (11th Cir. 2001) ("There is a strong presumption that counsel's performance was reasonable and adequate, with great deference shown to choices dictated by reasonable trial strategy.").

## III.   Analysis.

The centerpiece of Davis's § 2255 petition is his contention that his retained counsel (Huntley) rendered ineffective assistance by failing to request a downward departure at

-4-

sentencing pursuant to U.S.S.G. § 5C1.2(a).[2]  Of course, § 5C1.2(a) is a safety-valve provision that enables a sentencing court in certain limited circumstances to impose a sentence below the 10-year statutory minimum for § 841(a)(1) violations, and further operates in conjunction with U.S.S.G. § 2D1.1(b)(6) to effect a 2-point reduction in the base offense level for sentencing purposes for this offense of conviction.

Davis is sharply critical of Huntley for failing to make a § 5C1.2(a) request in this case; however, the record is clear that any such request would have been futile because Davis did not satisfy its prerequisites.  In particular, Davis failed to meet the requirement that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence that defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  § 5C1.2(a)(5).  It is undisputed that Davis never provided any such information and evidence to the Government.  Indeed, there was some discussion of the § 5C1.2(a) safety valve during the sentencing hearing.  At that time, the Government correctly pointed out as follows:  "Your Honor, there was a suggestion that the Defendant might be eligible for safety valve.  The Government submits that he is not.  He has at no time provided the Government with any information as is required by one of those factors." (Sentencing Transcript (doc. 44), at 10.)  Furthermore, in an Affidavit accompanying the Government's response, Huntley averred that he had discussed § 5C1.2 issues with his client, but that Davis steadfastly "elected a trial and advised me that he had no need to have any discussion with the Government."  (Huntley Aff. (doc. 65, Exh. 1), at 2.)[3]  Davis has not disputed his attorney's account of these discussions.

Viewed in the aggregate then, the uncontroverted record shows that Huntley informed his

---

[2]     For purposes of this discussion, the 2002 edition of the *United States Sentencing Commission Guidelines Manual*, dated November 1, 2002, shall be used.

[3]     Huntley's statement in this regard is corroborated by the "safety valve" notation on Davis's guideline worksheet generated during the probation conference held on May 1, 2003, more than a month before trial.  (Huntley Aff., at 2 & Exh. 1.)  Thus, Huntley's evidence shows (and Davis does not contest) that the safety valve option was discussed by defendant and counsel, but that Davis elected to proceed to trial and not to share information with the Government.

client about the potential availability of a safety valve to reduce his sentence, but that Davis insisted that there was no need to have any discussions with the Government.  It is further unchallenged that Davis never shared any information or evidence concerning the subject offense(s) with the Government, which was an absolute necessity for eligibility for the provisions of § 5C1.2.  Under these circumstances, had Huntley filed a § 5C1.2 motion prior to sentencing, such a motion would have had no reasonable chance of success because Davis unquestionably did not satisfy the criteria for safety valve eligibility.  Accordingly, this Court finds that it was neither constitutionally deficient performance of Huntley to refrain from filing such a motion on Davis's behalf, nor was Davis prejudiced by such an omission.[4]  This asserted ground for § 2255 relief is meritless.

Next, Davis contends that Huntley was constitutionally ineffective in representing him because Huntley failed to conduct certain unspecified "pretrial investigation".  (Doc. 52, at 6.) Davis fails to identify what investigation he believes Huntley should have done, but did not do, much less to explain how the fruits of that investigation would have been reasonably likely to alter the results of the underlying criminal proceeding.  This kind of vague, conclusory allegation of ineffective assistance fails on its face because Davis has failed to meet his burden of showing both deficient performance and prejudice under the *Strickland* standard.  *See Wilson*, 962 F.2d at 998 ("Conclusory allegations of ineffective assistance are insufficient.") (citation omitted). Besides, Huntley's uncontested Affidavit documents at least a portion of the pretrial investigation that he undertook on Davis's behalf, including screening audio and video surveillance tape recordings made by the Government, identifying witnesses from those tapes, interviewing those witnesses, and calling them to testify at trial that Davis's voice was not present on any of the tapes.  (Huntley Aff., at 2-3.)  Davis having failed to demonstrate how Huntley's pretrial investigation was allegedly inadequate, much less that such inadequacies created a reasonable probability that the results of the underlying criminal proceeding were compromised in some way, he has failed to establish any basis for finding that his Sixth

---

[4]      *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance" of counsel); *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (counsel is not ineffective for failing to raise issues "reasonably considered to be without merit").

Amendment right to counsel was violated in this respect.  *See generally Crawford v. Head*, 311 F.3d 1288, 1313 (11th Cir. 2002) ("no absolute duty exists to investigate particular facts or a certain line of defense") (citations omitted).

Finally, Davis criticizes his lawyer for "not mak[ing] himself familiar with 21 USC § 841(a)(1) and USSG § 5C1.2(a)."  (Petition (doc. 52), at 6.)  These allegations are frivolous. Huntley is a seasoned criminal attorney, with some 15 years of experience in litigating drug offenses from both the prosecution and the defense side of the aisle.  (Huntley Aff., at 2.)  In this capacity, he was obviously familiar with 21 U.S.C. § 841(a)(1) and U.S.S.G. § 5C1.2.  Davis does not articulate any factual basis for his apparent belief to the contrary.  Nor does Davis offer any evidence of how Huntley's alleged nonfamiliarity with these provisions worked some detriment to his defense in the criminal proceedings.  Petitioner having failed to establish any reason to believe that Huntley was unfamiliar with § 841(a)(1) or § 5C1.2, much less to demonstrate any prejudice arising from any gaps in Huntley's knowledge in this regard, he has failed to make the requisite showing for § 2255 relief on this claim of ineffective assistance.

## IV.   Conclusion.

For all of the foregoing reasons, Davis's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody (doc. 52) is **denied**.[5]  A separate judgment will enter.

**DONE** and **ORDERED** this 31st day of October, 2007.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[5]       The law is clear that "[a] district court may deny relief under 28 U.S.C. § 2255 without an evidentiary hearing if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *Long v. United States*, 883 F.2d 966, 968 (11th Cir. 1989) (citations omitted); *see also Lynn v. United States*, 365 F.3d 1225, 1239 (11th Cir. 2004) (reaffirming principle that § 2255 petitioner is not entitled to evidentiary hearing when his claims are mere conclusory allegations unsupported by specifics).  As the file in this case conclusively establishes that Davis is not entitled to relief on the grounds specified in his § 2255 petition, an evidentiary hearing would serve no purpose.  Accordingly, Davis's § 2255 petition is denied without a hearing.